1810.

Sunbury,
Monday,
June 11.

## Lessee of KEBLE *against* ARTHURS.

After two verdicts in favour of the same party, upon a simple matter of fact, it must be an extraordinary case in which the court will grant a new trial, though they have an undoubted right to do it; but it is otherwise where matter of law has been disregarded by the jury.

If a party knows of a survey having been made for another, and returned to the land office, without any improper conduct in the person obtaining it, it is against equity to permit the party having such knowledge to take advantage of those irregularities in the survey, over which the owner of it had no control.

THIS was an ejectment for a messuage and 155 acres of land in *Centre* county, tried before *Brackenridge* J. at a Circuit Court for *Centre* on the 21st *June* 1808. It had been previously tried before the Chief Justice, and a verdict found for the defendant, which was set aside.

By the report of his honour, the plaintiff claimed under a removed warrant in his own name, dated the 29th *July* 1773, surveyed on the 15th *August* 1783, and returned into office the 29th *June* 1784. The purchase money was paid on the 8th of *January* 1774.

The defendant claimed under an improvement commenced by one *Kelly* in 1793 or 1794, from whom it was purchased by *Arthurs*.

The case turned principally upon the validity of the plaintiff's survey, in relation to which the material evidence was this: By the return of survey, the plaintiff's south boundary was stated to be a number of *vacant hills;* in another part it called for land of *William Ramsey* as a boundary; the survey consisted in the whole of twelve lines or sides, of which six were the lines of prior surveys marked on the ground, but they were not called for in the return of survey; at least one line, however, peculiar to this survey, was marked on the ground, the same having been traced, and there was some evidence of others. Shortly after the defendant purchased of *Kelly*, he said that he knew *Keble's* claim well enough, but he did not care any thing about it; and there was evidence of conversations between *Arthurs* and the witnesses, (as well as the fact of *Arthurs'* residence near the ground five or six years,) before he bought, from which his knowledge of *Keble's* survey was inferrible. The south boundary however was not a ridge of hills, but it was about 40 poles from *Bald Eagle* creek, with a hill or two between; and *William Ramsey* had no survey in that quarter until the 19th *August* 1784, which was more than a year after the plaintiff's survey.

The defendant's counsel contended, that as the plaintiff's warrant was removed, it gave no right until survey on the ground, return and acceptance; and that this survey was not valid, because it contained internal evidence of not having been made on the ground, there being no hills, nor any survey for *Ramsey*, although the plaintiff's survey called for both. Such a return would not therefore be notice to any one; because, the warrant not being any guide, and the survey calling for what did not exist, it would not be possible for any one to know that it applied to the land in dispute. If the lines of old surveys had been set forth in the return, that would have been sufficient; but they were not mentioned, and therefore they could not serve as notice. *Arthurs'* knowledge of the claim was not enough; but if it were, the conversations were fixed to a point of time subsequent to his purchase.

The plaintiff's counsel admitted that the survey, under the removed warrant, conferred no right until returned into office; but as soon as accepted there, it was notice to all the world. That the survey was made on the ground in part, was proved to demonstration by the marked trees which applied to no other survey; and it was unnecessary to run all the lines, because six of them were already run and marked for other surveys. It was of no consequence that this did not appear by the return of the plaintiff's survey; because the objection now was that the survey was not made on the ground; and the answer to that was, that surveys already made on the ground, were as to one half the lines applicable to this, and therefore need not be repeated. The survey was thus sufficiently distinct, and it was of course constructive notice to all; but there was, in addition to this, actual knowledge by the defendant; and where a party has actual notice of a survey made for a third person, it cannot be endured that he should set up an irregularity in the deputy surveyor, to justify his attempt to wrest the property from the legal and honest proprietor. If one line has been run, and that fact is known to the settler, it has been decided by President *Walker* that the settler acquires no right.

His honour charged the jury as follows: Where a warrant is removed, and a survey actually made upon it, notice of the survey concludes the party who receives it, from alleging that the warrant was removed; and therefore the defendant in this case will be prevented from deriving any benefit from an objection of this sort, if he had notice of the survey. Actual notice is not necessary, for the return of survey gives such notice as the law respects equally with actual notice, namely, constructive notice.

But if the fact should turn out to be that no survey has been actually made, no return of a survey can be of any effect as to notice, because it will amount to no more than notice of a false return. If the officer has made a false return, the remedy must be against him or his representatives, and this is the remedy of the person interested in the return.

It has not been held by our courts that the survey must be made strictly according to the instructions of the surveyor general, or that it will be *void;* but I incline to think, that if it is not so made, it is voidable; that is, though good as between the grantor and grantee, it shall not affect third persons who have been led by the defect of so surveying, to lay out money, or to expend labour.

It will result to the question then in this case, was the survey actually made, and in substance according to the instructions of the surveyor general? The presumption is that it was, from the return of it. The surveyor's book of entries is conclusive evidence of the return, and of the time, though the want of this evidence would not be conclusive of its not being returned. It must lie therefore upon the defendant to establish the contrary, which is a negative position, and can be made out only by circumstances inconsistent with a survey.

The closing line in a survey is never run or marked; and I have never understood that any distinction has been made in this particular, between a removed warrant, and any other. But supposing it necessary that all the other lines be run and marked, the proof of one being marked is presumption to the jury that all the remainder have been marked, though not now to be found; and it is the province of the jury to weigh presumption, and infer from such evidence the conclusion that the officer has done what he was bound to do, and that

the survey has been legally made. It is matter of fact which I must leave with you. The principal circumstance, against the idea of a survey being made, is its calling for *Ramsey*, whose survey was not then made. You will weigh this in connexion with other circumstances.

The jury found for the defendant, and his honour refusing to grant a new trial, the plaintiff appealed to this court.

It was here argued by *Burnside* and *Watts* for the plaintiff, and by *Huston* and *Duncan* for the defendant, upon the same ground taken below, except that now the defendant's counsel pressed the circumstance of there being two successive verdicts for the defendant.

TILGHMAN C. J. The plaintiff, in this case, claims under a warrant and survey, and has paid all the purchase money. The defendant claims under a *settlement* made since the plaintiff's survey was returned, and contends that in fact no survey was ever made on the ground. It was submitted to the jury on the point, whether a survey was made or not; and they found for the *defendant*. We have had a report of the evidence from the judge, before whom the trial was had; and the verdict appears to have been so much against the weight of strong testimony, that I should not have had one moment's hesitation, about granting a new trial, were it not, that there have been two verdicts for the defendant. I have often said and now repeat, that after two verdicts on a simple matter of fact, it must be a very extraordinary case indeed, in which I could be induced to grant a new trial; because, although the court have an undoubted right to grant a third trial, yet it ought to be, in general, presumed, that where two juries have agreed, they must be in the right. In conformity to this principle, I should be for letting the present verdict stand, if I did not think that there was involved in the facts of this case, matter of law which has not been attended to by the jury. That some part of the plaintiff's survey was *made* and *marked* on the ground, was so incontestably proved, that I must suppose the jury had no doubt of it. I presume, they were of opinion, that the lines were not all run and marked, and therefore the survey was void. Now there was strong evidence, that the defendant, before he moved

1810.

Lessee of
KEBLE
*v.*
ARTHURS.

1810.

Lessee of
KEBLE
v.
ARTHURS.

on the land, knew of a survey having been made for the plaintiff, and returned to the land office. If that was the case, and the plaintiff had been guilty of no improper conduct, it would be against equity, that the defendant should deprive him of his right, even though there was some irregularity in the survey, over which he had no control. I should wish that the cause might be reconsidered under this aspect, for I am very strongly of opinion, that the plaintiff has been injured. From the present arrangement of the courts, it is not probable that this matter will ever again come under our consideration. I make no doubt, but justice will ultimately prevail, and my conscience is well satisfied, by consigning the cause for another trial, to the impartial tribunal appointed to take cognisance of it.

YEATES J. concurred.

Judgment reversed, and
New trial awarded.